Camann v. Camann                     CV-00-431-JD  05/21/01
            UNITED STATES DISTRICT COURT FOR THE
                  DISTRICT OF NEW HAMPSHIRE

In re: Stephen Camann
Joan Camann and Gregory Camann

     v.                              Civil No. 00-431-JD
                                     Opinion No. 2001 DNH 093
Stephen Camann


                       O R D E R


     The present bankruptcy appeal involves a family dispute over

the disposition of a family business.  Joan Camann and Stephen

Camann, who were divorced in 1995, considered a plan to convey

the family business, Camco Inc., to their son, Gregory Camann.

When progress toward implementing the plan slowed, Joan and

Gregory filed a petition in state court to enforce the plan as

part of the divorce decree.  Stephen then filed a petition in

bankruptcy.  The bankruptcy court determined that no enforceable

agreement existed to convey Camco to Gregory.  Joan and Gregory

Camann, as creditors of Stephen, appeal the decision of the

bankruptcy court.

     On appeal, this court reviews the bankruptcy court's legal

conclusions under a de novo standard.  See In re I Don't Trust,

143 F.3d 1, 3 (1st Cir. 1998).  In contrast, the bankruptcy

court's factual findings and applications of properly construed

law to fact are entitled to deference and will not be set aside

unless they are proven to be clearly erroneous.  See Fed. R.

Bankr. P. 8013; In re Winthrop Old Farm Nurseries, 50 F.3d 72, 73 (1st Cir. 1995). Under the clearly erroneous standard, the bankruptcy court's factual findings must be accepted unless the reviewing court is "'left with the definite and firm conviction that a mistake has been committed.'" Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)). Deferential review of the bankruptcy court's factual findings recognizes the bankruptcy judge's superior position to evaluate the credibility of witnesses and to make difficult judgment calls. See In re I Don't Trust, 143 F.3d at 4; Palmacci v. Umpierrez, 121 F.3d 781, 785 (1st Cir. 1997).

By way of background, the bankruptcy court concluded that in 1998 Stephen and Joan agreed in concept to a plan, which was proposed by Theodore Medrek, an accountant for Stephen and the family businesses, to divide their marital property. They began to negotiate the terms of the plan through their respective counsel. Medrek's plan included a provision that Stephen would give fifty percent of his stock in Camco to Joan, and then Stephen and Joan would sell all of the Camco stock to Gregory. Because the Medrek plan to divide their marital property had not been fully implemented by the summer of 1999, Joan filed a petition in state court to enforce their divorce decree

2

agreements. Before trial on Joan's petition, Stephen filed for bankruptcy, and litigation of the disputed matters continued in the bankruptcy court.

The bankruptcy court divided its consideration of Stephen's motion to reject the alleged agreement with Gregory (later expanded to include any alleged agreement with Joan) into two phases. In the first phase, the court would decide whether any enforceable contract existed. If so, in the second phase, the court would decide whether the contract was executory, and could therefore be assumed or rejected, and other related issues.

A hearing was held over four days on the first phase of the motion. The bankruptcy court heard testimony from five witnesses. Gregory, Medrek, and lawyers who represented Stephen and Joan in the course of the negotiations over Medrek's plan testified. A sixth witness, another lawyer involved in the negotiations, submitted testimony by deposition. The parties also submitted extensive evidentiary exhibits, which were considered by the court, together with the parties' pretrial statements and arguments of counsel.

The bankruptcy court found that the plan to sell Camco to Gregory was a part of the attempted overall settlement agreement between Stephen and Joan for the distribution of their property. Therefore, the existence of an enforceable agreement, which was a

key issue in this case, turned on whether or not Stephen and Joan had a meeting of the minds concerning the division of all of their assets. The bankruptcy court found that the disposition of Stephen's life insurance was a material term of their agreement that was never resolved between them. The court further found that because there was no meeting of the minds as to the disposition of the life insurance policy, along with other marital property, a valid and enforceable agreement did not exist between Stephen and Joan. Therefore, absent an agreement between his parents, the part of the agreement to sell Camco to Gregory was also not enforceable.

Under New Hampshire law, a dispute as to the existence of a contract presents a factual issue. See Trachy v. Laframboise, 2001 WL 286086, at *4 (N.H. Mar. 26, 2001) (quoting Harrison v. Watson, 116 N.H. 510, 511 ((1976)). "Offer, acceptance, and consideration are essential to contract formation." Tsiatsios v. Tsiatsios, 140 N.H. 173, 177 (1995). "'Among the requirements for contract formation is a meeting of the minds about terms--each party must have the same understanding as to the terms of the agreement.'" Simonds v. Manchester, 141 N.H. 742, 744 (1997) (quoting Appeal of Sanborn Reg'l Sch. Bd., 133 N.H. 513, 518 (1990)).

On appeal, Joan and Gregory do not contest the bankruptcy

4

court's application of the legal standards. They contend that the bankruptcy court's findings were clearly erroneous. Specifically, they argue that the court's findings, that any agreement to convey Camco to Gregory was part of his parents' agreement to distribute their marital property and was not a separately enforceable agreement, were clearly erroneous because Stephen did not testify to contradict Gregory's testimony about their agreement and because substantial evidence was presented to show that an independent agreement existed between Stephen and Gregory. The court has carefully reviewed the bankruptcy court's decision and the parties' submissions. The bankruptcy court considered evidence in support of both parties' positions. Based on the record presented, the court is not convinced that the bankruptcy court's findings were clearly erroneous.

Conclusion

For the foregoing reasons, the decision of the bankruptcy court is affirmed. Judgment shall be entered accordingly.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

May 21, 2001
cc:  Richard B. Couser, Esquire
     George J. Marcus, Esquire
     Andru H. Volinsky, Esquire
     John M. Sullivan, Esquire
     George Vannah, Clerk, USBC

5